### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATHERINE BIRL**, as parent and natural guardian of G.B., a minor and in her own right<br>17796 Sandcastle Cove<br>Lewes, DE 19958<br>    AND<br>**DAMIAN BIRL**, as parent and natural guardian of G.B., a minor and in his own right<br>12 Somerset Road<br>Rehoboth, DE 19971<br>    AND<br>**COLLIN BIRL**, in his own right<br>5 Thorne Street<br>Jersey City, NJ 07307<br><br>                *Plaintiffs*<br><br>        v.<br><br>**SKI SHAWNEE, INC.**<br>401 Hollow Road<br>East Stroudsburg, PA 18301<br><br>                *Defendant* | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

### **COMPLAINT – CIVIL ACTION**

**COME NOW** Plaintiffs, Katherine Birl and Damian Birl, as parents and natural guardians of G.B., a minor and in their own right and Collin Birl, in his own right, by and through their attorneys, Saltz Mongeluzzi & Bendesky P.C., bring this civil action Complaint seeking judgment against Defendant, Ski Shawnee, Inc., and allege as follows:

### **INTRODUCTION**

1.    On January 12, 2021, G.B.'s life was tragically altered after he violently crashed into an unguarded and improperly placed light pole while snowboarding on Shawnee Mountain.

1

2. As a result, G.B. suffered a devastating spinal cord injury resulting in paralysis from the chest down to his lower extremities.

3. G.B. was sixteen (16) years old at the time he suffered his horrific injury.

## PARTIES

1. Plaintiff, Katherine A. Birl, is an adult individual that resides at 17796 Sandcastle Cove, Lewes, DE 19958 and is a citizen of the state of Delaware.

2. Katherine Birl is the mother and natural guardian of G.B., a minor and Collin Birl.

3. Katherine Birl brings this action as a parent and natural guardian of Plaintiff, G.B., a minor.

4. Plaintiff, Damian Birl, is an adult individual that resides at 12 Somerset Road, Rehoboth, DE 19971 and is a citizen of the state of Delaware.

5. Damian Birl is the father and natural guardian of G.B., a minor and Collin Birl.

6. Damian Birl brings this action as a parent and natural guardian of Plaintiff, G.B., a minor.

7. Plaintiff, Collin Birl, is an adult individual that resides at 5 Thorne Street, Jersey City, NJ 07307 and is a citizen of the state of New Jersey.

8. Collin Birl is the brother of G.B., a minor.

9. Collin Birl brings this action on behalf of himself, individually, and as the brother of Plaintiff, G.B., a minor.

10. G.B., a minor, was born on October 29, 2004.

11. G.B. resides with his mother Katherine Birl at 17796 Sandcastle Cove Lewes, DE 19958 and is a citizen of the state of Delaware.

12.     Defendant, Ski Shawnee, Inc., (hereinafter referred to as "Shawnee") was at all times material hereto, a corporation, limited partnership, or other business entity organized, existing and operating under the laws of the Commonwealth of Pennsylvania with its principal place of business located at the above captioned address.

13.     At all times material hereto, Defendant, Shawnee, purposely established significant contacts in the Commonwealth of Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania.

14.     At all times material hereto, Defendant, Shawnee, was acting by and through its employees, agents, workers and/or representatives, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant.

15.     At all material times hereto, Defendant, Shawnee owned, possessed, operated, maintained and controlled a ski resort known as Shawnee Mountain Ski Area located at 401 Hollow Road, East Stroudsburg, PA 18301, commonly known and referred to as "Shawnee Ski Resort" ("Shawnee Mountain").

16.     At all times material hereto, Defendant Shawnee regularly conducted business, marketed and advertised their winter ski activities, including skiing, snowboarding and snow tubing in the counties comprising the Eastern District of Pennsylvania and upon information and belief derived significant revenue from patrons living in counties throughout the Eastern District.

## JURISDICTION AND VENUE

17.     This is a civil action seeking compensatory and punitive damages for injuries sustained by Plaintiffs while business invitees of Shawnee.

18.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. Venue in the Eastern District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391, because the Defendant has sufficient contacts with the Eastern District of Pennsylvania such that maintenance of this suit is appropriate.

## FACTUAL BACKGROUND

20. In the winter months Shawnee offers various winter activities, including skiing, snowboarding and snow tubing.

21. Defendant, Shawnee's promotional efforts direct potential customers to the Shawnee Mountain website, which is a fully interactive website that permits visitors to conduct business directly with Defendant, Shawnee.

22. In particular, Shawnee's website allows users to schedule ski and snowboarding lessons; obtain information regarding the slopes, trails, and terrain parks; and *inter alia*, purchase ski lift tickets and print vouchers for said lift tickets.

23. Prior to January 12, 2021, Collin Birl went online to, Shawnee's website and purchased ski lift tickets in anticipation of visiting Shawnee Mountain.

24. At all times material hereto, Collin and G.B. were lawfully on the premises as business invitees, to whom Shawnee owed the highest duty of care.

25. At all times material hereto, Shawnee had a duty to provide a reasonably safe environment to those lawfully on the premises to engage in recreational activities, including Plaintiffs.

26. At all times material hereto, Shawnee had a duty to warn or otherwise make safe any dangerous conditions upon its property which Defendant knew or should have known existed.

4

27. At all times material hereto, Shawnee had a duty to design, maintain and operate its ski trails to provide a reasonably safe environment for skiing and snowboarding, without unreasonable risk of injury or serious bodily injury.

28. At all times material hereto, Shawnee was required to ensure that any "freestyle area" and/or "terrain park" and/or trail run constructed and/or in use on its trails by Defendant, did not create a dangerous condition for patrons resulting in unnecessary risk of serious bodily injury.

29. At all times material hereto, Shawnee was aware that fixed objects along the trail, including unguarded light poles, could create a hazardous condition for patrons if not properly guarded with a safety barrier to prevent serious bodily injury.

30. At all times material hereto, Shawnee failed to make the ski trail including, but not limited to the "Lower Delaware" ski trail, reasonably safe through either the erection of barricades or other safety measures which would prevent serious injury to patrons from collisions with fixed objects, including light poles, located along the trail.

31. A ski resort, including Shawnee, must not create an unreasonably dangerous condition and/or artificial hazard on its Mountain.

32. A ski resort, including Shawnee, must not permit an unreasonably dangerous condition and/or artificial hazard to continue to exist on its Mountain.

33. A ski resort, including Shawnee, must take steps to prevent unreasonably dangerous conditions from developing on its Mountain.

34. A ski resort, including Shawnee, is not allowed to needlessly endanger invitees.

35. A ski resort, including Shawnee, must correct any unreasonably dangerous conditions it knows or should know about on its Mountain.

36. A ski resort, including Shawnee, must perform inspections on its premises to discover unreasonably dangerous conditions.

37. A ski resort, including Shawnee, should train its employees, agents, workers and/or representatives to ensure they perform their job in a competent and safe manner.

38. A ski resort, including Shawnee, that refuses or is unable to correct an unreasonably dangerous condition must provide others with an appropriate notice and warning of such condition.

## THE ACCIDENT

39. On January 12, 2021, Collin and G.B. traveled to Shawnee Mountain to go snowboarding.

40. This was Collin's and G.B.'s first ever visit to Shawnee.

41. At approximately 10:00 a.m., Collin and G.B. arrived at Shawnee.

42. Both Collin and G.B. brought with them their own snowboarding equipment and protective equipment, including a helmet, coat, gloves, boots, and goggles, to use while at Shawnee.

43. At no time did Collin nor G.B. receive any instruction, training and/or warning from the Defendant's employees, agents, workers and/or representatives thereof, regarding safe operation of a snowboard on their ski trails.

44. At no time did Collin nor G.B. receive any instruction, training and/or warning from the Defendant's employees, agents, workers and/or representatives thereof, regarding safe navigation of narrowing trails with sharp curves, while snowboarding on their ski trails.

45. At no time did the Defendant's employees, agents, workers and/or representatives inquire as to the skill level of either Collin or G.B. to assist in properly guiding them to an appropriate level ski trail.

46. At all times material hereto, Defendant, Shawnee constructed a "freestyle area" or "terrain park" on the "Lower Delaware" ski trail, which was designated as a "terrain park," to allow skiers and snowboarders to partake in jumps, stunts, and tricks, while on the trail.

47. At all times material hereto, the "Lower Delaware" ski trail was too narrow and unsuitable for the use of a terrain park that contained jumps, kickers, bumps and/or moguls therein.

48. At all times material hereto, Shawnee failed to consider that the "Lower Delaware" ski trail became narrower due to the construction of the terrain park on the trail and, as a result, skiers and snowboarders were required to make immediate and precise turns upon landing to avoid running into, *inter alia*, unguarded light poles and other obstacles or hazards.

49. Prior to the accident, Collin and G.B. made two (2) or three (3) runs down the mountain without incident.

50. Thereafter, Collin and G.B. took a lift up to the top of the mountain and began snowboarding down the "Lower Delaware" ski trail.

51. At approximately 10:30 a.m., as G.B. proceeded down the "Lower Delaware" and through the terrain park owned, designed, maintained, controlled and/or operated by Shawnee, due to the trail's narrowness and defective design, as he went to land after going over a mogul, bump and/or jump, he was required to make an immediate and precise turn.

52. Because of the defective nature of the trail, he was required to make a sudden immediate and precise turn, G.B. lost control and violently crashed into the unguarded light pole located along the side of the trail.

53. The subject unguarded and improperly placed light pole was located mere yards from where G.B. landed.

54. As a direct result of the dangerously located jump in the terrain park, and Defendant's failure to place any safety barriers in front of and/or around the light pole, G.B. was caused to lose control while snowboarding along the "Lower Delaware" trail and violently crash into the unguarded and improperly placed light pole sustaining severe, disabling, and permanent injuries.

55. At the time of the accident, G.B. was wearing protective equipment which included a helmet, coat, gloves, boots, and goggles.

56. As a result of the violent crash, G.B. was knocked unconscious.

57. Immediately following the collision, Collin passed by G.B.'s motionless body.

58. Upon reaching the bottom of the trail, and immediately following G.B.'s accident, Collin received a phone call from G.B. stating that he was hurt, his teeth had been knocked out, and he could not move.

59. Collin immediately called ski patrol to report the accident and rushed up the trail in a panicked state to locate and save G.B.

60. Within mere moments, Collin arrived at the scene of G.B.'s catastrophic accident.

61. When Collin found him, G.B. was lying in the snow, his body was motionless, and he was visibly in distress and pain.

62. The shock of finding G.B. in such a catastrophically injured state and knowing that his injuries were getting worse with every passing minute, caused Collin to sustain devastating emotional injuries and trauma.

63. At or around the same time, Shawnee ski patrol arrived and began providing medical assistance to G.B., while Collin watched.

64. G.B. was placed onto a spinal board, brought to the base of the mountain and airlifted by helicopter to Lehigh Valley Hospital-Cedar Crest.

65. Upon arriving to Lehigh Valley Hospital-Cedar Crest, G.B. was emergently taken to the operating room where he underwent a (i) spinal laminectomy; (ii) bilateral spinal fusion requiring metal plates and screws to stabilize his spine; (iii) repair of four (4) rib fractures; (iv) evacuation of an epidural hematoma and decompression of his spinal cord.

66. G.B. remained in the hospital for nine (9) days.

67. Following discharge at Lehigh Valley, G.B. underwent intensive rehabilitation at Magee Rehabilitation–Riverfront where he remained in-patient for three (3) months.

68. G.B. continues to receive extensive medical treatment, rehabilitation and therapy due to his catastrophic and permanent injuries.

69. As a direct result of Shawnee's actions, inactions and complete failures, G.B. is paralyzed from the chest down, cannot walk and has no sensation in his lower extremities.

70. At the time of the accident, no barriers, signs, nets, and/or pads were set up in or around the unguarded light pole.

71. At the time of the accident, the jump, kicker, bump and/or mogul located in the terrain park on Lower Delaware trail was defective and created an unreasonable risk to all those who traveled down the trail, including Plaintiffs.

72. Upon information and belief, the jump, kicker, bump and/or mogul was artificially created by or with the knowledge of Defendant, and negligently required a patron of Shawnee to perform immediate and precise turns and adjustments to avoid striking unguarded and/or improperly placed poles along the trail.

73. Because of this, this area on Lower Delaware trail was dangerous and defective, and posed an unreasonable risk to all who traveled down the trail, including G.B.

74. At all times material hereto, G.B. exercised due care while snowboarding, and acted in a careful and cautious manner.

75. The aforementioned crash was in no manner whatsoever caused by any act, or failure to act, on the part of G.B., but was caused solely and exclusively by the negligence, gross negligence and recklessness and/or other liability producing conduct of Shawnee as set forth in this Complaint.

76. As a direct and proximate result of the negligence, carelessness, recklessness and/or other liability producing conduct of Shawnee, G.B. sustained severe, disabling, catastrophic and permanent injuries including but not limited to: (i) blunt force trauma; (ii) loss of consciousness; (iii) paralysis below T4, (iv) rib fracture right 1 and 2/ left 4 and 5; (v) epidural hematoma T2-T8; (vi) traumatic kyphosis T4 with vertebral subluxation T4-5; (vii) fracture left spinous prices T6-T7; (viii) severe three column injury; (ix) neurogenic bladder; (x) right shoulder pain; and (xi) severe spinal cord injury.

77. As a direct and proximate result of the negligence, carelessness, recklessness and/or other liability producing conduct of Shawnee, G.B. has in the past required and will in the future continue to require surgeries, medicines, medical care and treatment; he has in the past been and may in the future continue to incur expenses for medical care and treatment; he has in the past suffered and will in the future continue to suffer paralysis, no sensation in his lower extremities, agonizing aches, pain, insomnia, anxiety and mental anguish; he sustained a loss of education; he sustained loss of enjoyment of life and loss of life's pleasures; he has in the past and may in the future continue to be disabled from performing activities of daily living; and he has in the past and

may in the future continue to be totally disabled from performing his usual duties and occupations all to his loss and detriment.

78. As a direct and proximate result of the negligence, carelessness, recklessness and/or other liability producing conduct of Shawnee, Collin Birl was forced to suffer serious, disabling, and permanent injuries, including but not limited to neurological injuries, psychological injuries, and emotional distress, including but not limited to: (i) insomnia; (ii) depression; (iii) crying spells; (iv) lost appetite; (v) post-traumatic stress; (vi) aches; (vii) pains; (viii) anxiety; and (ix) nausea.

79. As a direct and proximate result of the negligence, carelessness, recklessness and/or other liability producing conduct of Shawnee, Collin Birl has in the past and may in the future require medicines, medical care and treatment. Collin Birl has in the past and may in the future continue to be compelled to expend monies and incur further obligations for such medical care and treatment. Collin Birl has in the past and may in the future continue to suffer agonizing psychological and emotional anguish. Collin Birl has in the past and may in the future continue to be disabled from performing his usual duties, occupations, and avocations, all to Plaintiff's great loss and detriment.

### COUNT I – NEGLIGENCE
### DAMIAN BIRL AND KATHERINE BIRL, AS PARENTS AND NATURAL GUARDIANS OF G.B., AND IN THEIR OWN RIGHT v. SKI SHAWNEE, INC.

80. Plaintiffs incorporate all preceding paragraphs as though fully set forth at length herein.

81. At all times material hereto, Shawnee owned, operated, maintained, possessed, managed, and controlled Shawnee Mountain, including the Lower Delaware trail and the trail's terrain park.

82. At all times material hereto, Shawnee owed a duty to business invitees, including Plaintiffs, to provide a reasonably safe environment, free from unnecessary and unreasonable hazards or defects, within which to enjoy recreational activities, such as snowboarding.

83. At all times material hereto, Shawnee designed, installed, maintained, inspected, established plans for and/or approved the installation of the terrain park, including any and all jumps, located on the Lower Delaware trail.

84. At all times material hereto, Shawnee had a duty to ensure that the jumps located on Lower Delaware's terrain park were reasonably safe, properly designed and located, and free from immediate and unnecessary hazards.

85. At all times material hereto, Shawnee was responsible for all safety, inspections, maintenance and/or warnings related to jumps located on Lower Delaware's terrain park.

86. At all times material hereto, Shawnee was responsible for placing signs, barricades and/or barriers including but not limited to signs, fencing, nets, and/or pads to shield business invitees from serious injury from collisions with fixed objects, including unguarded light poles.

87. At all times material hereto, Shawnee was responsible for ensuring that skiers and snowboarders would not have to make an immediate and precise turn after going over the jumps in the terrain park on the Lower Delaware trail to avoid hazards, including but not limited to unguarded light poles.

88. G.B.'s accident, which resulted in severe, permanent and catastrophic injuries, was caused by the negligence, gross negligence, careless and reckless conduct and/or other liability producing conduct of Shawnee, its employees, agents, servants, workers and/or representatives, both generally and in the following respects:

    a. Failing to provide a reasonably safe environment to those lawfully on the premises to engage in recreational activities, including Plaintiffs;

b. Failing to warn or otherwise make safe any unreasonably dangerous conditions upon its premises which Defendant knew or should have known existed;

c. Failing to design and maintain its ski trails so as to provide a reasonably safe environment for snowboarding, without unnecessary risk of injury or serious bodily injury;

d. Failing to ensure that any terrain park feature, including any and all jumps, constructed on the mountain, did not create an unreasonably dangerous condition for patrons resulting in unnecessary risk of serious bodily injury;

e. Failing to ensure that fixed objects along the trail, including light poles, did not create an unreasonably hazardous condition for patrons;

f. Failing to properly guard fixed objects along the trail, including light poles;

g. Failing to erect suitable and necessary barricades and/or other safety protections around the subject light pole to prevent serious bodily injury and/or death;

h. Failing to properly design and maintain the Shawnee ski trails so that the trails did not create an unreasonably dangerous and unnecessary risk for patrons, including Plaintiffs;

i. Negligently designing and maintaining a ski trail that narrowed and required immediate and precise turns, making the landing area dangerous and defective, and which posed an unreasonable risk to all those who traveled down the trail, including G.B.;

j. Failing to take necessary steps to prevent unsafe conditions from developing at Shawnee Mountain;

k. Failing to properly position all jumps, moguls, bumps and/or kickers in the terrain park on the Lower Delaware ski trail;

l. Failing to properly protect skiers and snowboarders from the unreasonably dangerous condition caused by the placement of the defectively designed jumps in the terrain park on the Lower Delaware ski train, including Plaintiffs;

m. Failing to warn skiers of the unreasonably dangerous conditions existing on the Shawnee ski trails;

n. Failing to have sufficient personnel at Shawnee to properly supervise skiing and snowboarding activities on the mountain;

o. Failing to employ, train and retain competent personnel to properly supervise skiing and snowboarding activities on the mountain;

p. Failing to follow appropriate standards, customs and practices regarding the reasonably safe design and operation of a ski area and the placement of fixed objects, including jumps, moguls, kickers and/or bumps and poles along the trails;

q. Failing to act with due care under the circumstances; and

r. Designating and using the "Lower Delaware" trail as a "terrain park" with fixed objects located in close and dangerous proximity to patrons on that trail.

89. By reason of the negligence, gross negligence, careless and reckless conduct and/or other liability producing conduct of Shawnee, G.B. was caused to sustain severe, permanent and life-altering injuries as more fully described in the preceding paragraphs of this Complaint.

90. The acts and omissions of Shawnee, as fully described in the preceding paragraphs of this Complaint, were intentional, deliberate and known by Shawnee to place skiers and snowboarders, such as G.B., at increased risk of serious injury and/or death.

WHEREFORE, Plaintiffs, Katherine Birl and Damian Birl, as parents and Natural Guardians of G.B., demands of Defendant, Ski Shawnee, Inc., an amount in excess of Seventy-Five Thousand ($75,000.00) in compensatory damages, punitive or exemplary damages, delay damages, interest and allowable costs of suit, and brings this action to recover same.

### COUNT II-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### COLLIN BIRL, IN HIS OWN RIGHT v. SKI SHAWNEE, INC.

91. Plaintiffs incorporate all preceding paragraphs as though fully set forth at length herein.

92. At all times material hereto, Collin Birl was G.B.'s brother and lived with him at their parent's residence.

93. The tragic accident which rendered G.B. paralyzed below his chest was, by every measure, a traumatic event.

94. Upon reaching the bottom of the trail, and immediately following G.B.'s accident, Collin received a phone call from G.B. stating that he was hurt, his teeth had been knocked out, and he could not move.

95. Collin immediately called ski patrol to report the accident and rushed up the trail in a panicked state to locate and save G.B.

96. Within mere moments, Collin arrived at the scene of G.B.'s catastrophic accident.

97. When Collin found him, G.B. was lying in the snow, motionless, visibly in distress and pain.

98. The shock of finding G.B. in such a catastrophically injured state and knowing that his injuries were getting worse with every passing minute, caused Collin to sustain devastating emotional distress, psychological pain, emotional scarring, fear, anxiety, mental anguish, and other debilitating emotional, psychological and mental injuries, some or all of which manifested as a physical injury.

99. Shawnee's negligence, gross negligence, carelessness, and/or recklessness was continuous and ongoing up until the point when G.B. was found by his brother, Collin Birl.

100. Collin Birl was physically present with G.B., in close proximity to G.B. and was a contemporaneous observer of the horrific, ongoing negligence, gross negligence, carelessness, and/or recklessness of Shawnee and the injuries suffered by G.B.

101. It was foreseeable to Shawnee that its egregious, continued and ongoing failure to guard and/or otherwise protect patrons from poles and/or other artificial hazards on the mountain would result in severe emotional trauma and distress to G.B.'s close family members upon finding G.B.

102. As a result of Shawnee's conduct, as previously averred, and resulting from the events witnessed by Collin Birl as described above, Collin Birl suffered and continues to suffer severe emotional distress, psychological pain, emotional scarring, fear, anxiety, mental anguish,

and other debilitating emotional, psychological and mental injuries, some or all of which manifested as a physical injury, the full extent of which may not have yet been realized.

WHEREFORE, Plaintiff, Collin Birl, demands of Defendant, Ski Shawnee, Inc., an amount in excess of Seventy-Five Thousand ($75,000.00) in compensatory damages, punitive or exemplary damages, delay damages, interest and allowable costs of suit, and brings this action to recover same.

**SALTZ MONGELUZZI & BENDESKY P.C.**

BY:   /s/ Robert J. Mongeluzzi
ROBERT J. MONGELUZZI
LARRY BENDESKY
ADAM J. PANTANO
SCOTT A. FELLMETH
I.D. Nos. 32683/51026/85261/321505
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA  19103
(215) 496-8282
Fax (215) 496-0999
*Attorneys for Plaintiffs*