IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE BIRL, as parent and natural guardian of G.B, a minor, and in her own right, et al., | : <br> : Civ. No. 3:22-CV-1598 <br> : |
| Plaintiffs, | : <br> : |
| v. | : (Chief Magistrate Judge Bloom) <br> : |
| SKI SHAWNEE, INC., | : <br> : |
| Defendant. | : |

MEMORANDUM OPINION

I. Introduction

This case is before us on a motion for summary judgment filed by the defendant, Ski Shawnee, Inc. ("Shawnee"). (Doc. 46). The action was initiated by Katherine and Damian Birl on behalf of their minor child, G.B. (Doc. 26). G.B. suffered severe injuries in a snowboarding accident at Shawnee Mountain, a ski resort operated by Shawnee. (*Id.*). The Birls contend the accident was a result of Shawnee's negligence. (*Id.*). Shawnee has moved for summary judgment on the grounds that the action is barred by the Skier's Responsibility Act ("SRA"), codified at 43 Pa. Cons. Stat. Ann. § 7102(c). For the following reasons, we will grant the motion.

## II. Background

On January 12, 2021, G.B., a minor child, crashed into a light pole while snowboarding at Shawnee Mountain. (Doc. 26 ¶ 1). G.B. went to Shawnee Mountain with his older brother, Collin Birl. (*Id.* ¶¶ 19-20). They arrived around 10:00 a.m., with their own snowboards and gear, and completed two or three runs without incident. (*Id.* ¶¶ 38, 39, 46). They next rode down the "Lower Delaware" trail, which includes a terrain park. (*Id.* ¶ 48). A terrain park is a type of ski run where items such as jumps, kickers, bumps, and moguls are present on the trail so that riders may use them to undertake stunts, tricks, and jumps. (*Id.* ¶¶ 43-44). G.B. went over one of these jumps and crashed into a light pole located amongst the trees along the side of the trail. (*Id.* ¶ 51). No barriers, nets, or pads protected the pole, and no sign warned of its presence. (*Id.* ¶ 64). G.B. has no memory of the events starting from the time he prepared to take the second of two sequential jumps until he woke up post-collision. (Doc. 51 ¶¶ 62, 63).

G.B.'s resulting injuries were myriad and significant, including, *inter alia*, fractures to his spine and severe spinal cord injuries. (Doc. 26 ¶¶ 59, 70). He underwent emergency surgery that same day at Lehigh

Valley Hospital-Cedar Crest, where they performed a spinal laminectomy, bilateral spinal fusion, repair of four rib fractures, evacuation of an epidural hematoma and decompression of his spinal cord. (*Id.*). He remained in the hospital for nine days. (*Id.* ¶ 60). G.B. next underwent intensive inpatient rehabilitation for three months. (*Id.* ¶ 61). Despite treatment, G.B. is paralyzed from the chest down, cannot walk, and has no sensation in his lower extremities. (*Id.* ¶ 63).

G.B., by and through his parents, sued Shawnee, initially alleging negligence and negligent infliction of emotional distress. (Doc. 1). After Shawnee filed a motion to dismiss (doc. 19), the plaintiffs amended their complaint, dropping the negligent infliction of emotional distress claim and pursuing a single claim of negligence. (Doc. 26 ¶¶ 72-82). Shawnee raised eight affirmative defenses in response, including that this claim is barred by the SRA. (Doc. 29 at 14-15).

On September 12, 2024, Shawnee filed a motion for summary judgment, arguing that the undisputed material facts entitle them to judgment under the SRA. (Doc. 46). The motion is now fully briefed (Docs. 47, 50, 51, 52, 55, 56) and ripe for resolution.

After consideration, we will grant the motion.

Case 3:22-cv-01598-DFB Document 63 Filed 01/06/25 Page 4 of 13

III. Discussion

A. Motion for Summary Judgment – Standard of Review

The defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from

4

which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

B. <u>The Defendant's Motion for Summary Judgment will be Granted.</u>

The parties submit, and we agree, that diversity jurisdiction applies here. *See* 28 U.S.C. § 1332. When sitting in diversity, this court is obligated to apply the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). It is uncontested by the parties that Pennsylvania state law applies. While Pennsylvania typically applies the doctrine of comparative negligence to tort claims, the Pennsylvania legislature passed the SRA specifically and solely to retain the "assumption of risk" defense with regards to lawsuits involving the sport of downhill skiing. 42 Pa. Cons. Stat. Ann. § 7102(c). The SRA's brief text has no other effect except to exempt defendants in cases related to

5

downhill skiing from other statutory text that prohibits the "assumption of risk" defense in most non-skiing situations. *Id.*

In *Hughes v. Seven Springs Farms*, the Pennsylvania Supreme Court developed a straightforward test for determining if the SRA applies. The *Hughes* test applies the SRA where: (1) the plaintiff was engaged in the sport of downhill skiing at the time, and (2) the injury arose "out of a risk inherent to the sport of skiing." *Hughes v. Seven Springs Farm, Inc.,* 762 A.2d 339, 344 (Pa. 2000). The *Hughes* court explained that for a risk to be inherent, it must be "common, frequent, and expected." *Id.,* at 345. In a later case, the court explained that the key consideration is not if the plaintiff has assumed the *specific* risk involved, but rather, if the damages arise out of a general risk inherent to the sport. *Chepkevich v. Hidden Valley Resort*, 2 A.3d 1174, 1188 (Pa. 2010).

Courts applying *Hughes* often find the question of inherent risk to be outcome determinative. *Compare Savarese v. Camelback Ski Corp.*, 417 F. Supp. 2d 663 (M.D. Pa 2005) (holding that falling during loading onto an improperly folded ski lift seat was a risk inherent to skiing) *with Crews v. Seven Springs Mountain Resort*, 874 A.2d 100 (Pa. Super. Ct.

2005) (holding that the risk of colliding with a drunk underage snowboarder was not a risk inherent to skiing). Where both elements of *Hughes* are met, "summary judgment is appropriate because, as a matter of law, the Defendant would have had no duty" to the plaintiffs. *Barillari v. Ski Shawnee, Inc.*, 986 F.Supp.2d 555, 560 (M.D. Pa. 2013).

As a threshold matter, the SRA has been held to apply to snowboarding as well as skiing. *See e.g., Ashmen v. Big Boulder Corporation*, 322 F.Supp.3d 593 (M.D. Pa. 2018) (applying the *Hughes* test to a snowboarder). The parties do not dispute that G.B. was snowboarding at the time and that *Hughes* and the SRA apply here. (*See Generally* Docs. 50, 51). Since the first element of *Hughes* is not at issue, the sole question for our consideration is if the risk that was assumed here is one that is inherent to the sport. The plaintiffs characterize the risk as something like a risk that a terrain park's design will position a rider directly off trail. The defendant's characterization is more general, arguing that the risk is one of losing control and colliding with an off-trail obstacle.

We reiterate that when applying *Hughes*, "courts have rejected attempts by plaintiffs to define the injury producing risks in [a very]

7

specific and narrow manner." *Cole v. Camelback Mountain Ski Resort*, 2017 WL 4621786, at *4 (M.D. Pa. 2017). Yet courts assessing these claims often reference the context of the specific skier to determine what risks are inherent, a sensible approach given the SRA's relationship to the common law doctrine of assumption of the risk. *See Bjorgung v. Whitetail Resort*, LP, 550 F.3d 263, 269 (3d Cir. 2008) (finding that the fact that the plaintiff was engaged in high speed ski racing was relevant to the determination of inherent risk, and ultimately holding that the "cognizable risks inherent in ski racing are legion."); *Burke v. Ski America, Inc.*, 940 F.2d 95 (4th Cir. 1991) (held that colliding with on-trail rocks and trees was an inherent danger of skiing double black diamond slopes); *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir. 1983) (plaintiff skier's choice to go down an expert trail he saw others struggle with influenced what risks were inherent). Accordingly, while it is clear under *Hughes* that we should not consider if the plaintiff assumed any "specific risk," it is equally clear that the risks that are inherent depend, at least in part, on the context of the plaintiff's skiing. The relevant risks are not limited to those inherent to skiing generally, but to the type of skiing that the plaintiff undertook.

*Bjorgung* is instructive here. The plaintiff in that case made two factual arguments similar to those made by the plaintiffs here: that a lack of proper safety netting, and a course plotting which directed skiers towards the edge of the trail, made the off-trail crash outside the inherent risks of skiing. *Bjorgung*, 550 F.3d at 269. The Court found those risks were "altogether inherent in the activity undertaken by plaintiff." *Id.* The Court emphasized that the activity was not merely downhill skiing, but downhill ski racing, which influenced which risks could be deemed inherent or not. *Id.* ("The cognizable risks inherent *in ski racing* are legion.") (emphasis added). Here, the parties agree that G.B. was snowboarding in a terrain park, and that jumping and other snowboard tricks are performed in such a park. (Doc. 26 ¶ 43; Doc. 29 ¶ 43). Thus, the question before us is whether this crash was caused by risks inherent to terrain park snowboarding.

The plaintiffs' argument mimics *Bjorgung* in that it asks us to find that the man-made conditions of the mountain were such that they created risks not inherent to the snowboarding activities. Were the plaintiffs able to make a showing that G.B. remained in control after performing the jump in question and that despite retention of control he

had no chance to avoid the light pole, because the jump necessarily put him on an unavoidable path to collision, we might be persuaded to characterize the risk as plaintiffs have here. But, besides the fact that this is arguably the type of specific and narrow risk that *Hughes* instructs us not to consider, the undisputed facts of the case do not support such a characterization. Rather, the undisputed material facts are that G.B. lost control of his snowboard.

While the plaintiffs now assert that "G.B. was always in control" of his snowboard (Doc. 50 at 19; Doc. 55 at 2), the plaintiffs' own allegations—that ". . . G.B lost control and violently crashed . . ." and that ". . . G.B. was caused to lose control . . ."—contradict such an assertion. (Doc. 26 ¶¶ 49, 51). *See Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings . . . that are binding upon the party making them.")). Even if the plaintiffs were not bound by the admissions set forth their complaint, it is clear G.B. does not remember the critical moments before the crash, so it is impossible for the plaintiffs to establish he was "always in control," and accepting that he was, even for the purposes of summary

judgment, is therefore not a reasonable inference for us to make. Further, the plaintiffs' other filings seem to belie the assertion that he had control. (*See* Doc. 55 at 4 ("When G.B. went over the second jump . . . he was not afforded an opportunity to regain his composure and balance . . .")). In sum, there is no genuine dispute that G.B. lost control.

Even accepting the plaintiffs' version of events—that the course "caused" G.B.'s loss of control, and ultimately, his collision with an off-trail obstacle—we conclude that this risk is inherent to the activity undertaken by G.B.: snowboarding in a terrain park. Decisions within this circuit comport with this finding. *See e.g.*, *Bjorgung*, 550 F.3d at 265, 269 (finding that skiing off trail during a slalom race and striking a tree was a risk inherent to skiing); *Smith*, 716 F.2d at 1004-05, 1009 (holding that a skier who lost control on an icy slope and collided with an unpadded pole assumed the risk); *see also Cole*, 2017 WL 4621786, at *4 ("Accidentally striking an object while skiing down a slope is unquestionably a common, frequent, and expected risk in the sport of downhill skiing. Indeed, if such a risk was not inherent in the sport, one could hardly imagine what risks would be inherent.").

Snowboarding is a dangerous activity. Riding a snowboard in a terrain park to perform tricks and jumps increases the risk of that activity. Even accepting that the design of the park itself caused G.B. to lose control, it does not follow that the risk of losing control was not inherent to the activity. When one jumps their snowboard off terrain park features, they may lose control, and the resulting fall or collision can result in tragic, catastrophic injuries, as it did here. These are the risks assumed by a terrain park snowboarder, and we find they are inherent to that activity.

The undisputed material facts[1] of the case lead us to the conclusion that the SRA applies and absolves defendants of any duty owed to G.B., and with it any liability for these injuries. Accordingly, Shawnee is entitled to judgment as a matter of law, and their motion for summary judgment will be granted.

---

[1] We note that the parties have disagreements about many facts in this case, but because the SRA has only two elements, only facts relevant to those elements are material to this motion. The parties' subjective opinions about how well designed or maintained the course was, if it was up to certain national standards, or what G.B. did or did not ascertain about the course as he rode it, etc., are immaterial to the SRA, and so to this motion.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 46) will be GRANTED.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: January 6, 2025